Sutliff, J.
The first inquiry presented by the record and; the assignment of errors, is as to the sufficiency of the indict *673 ment. Does the indictment, upon which the conviction was had, sufficiently show an offense defined by the statute referred to ? The conviction was upon the last two counts of the indictment. And the material averments of each of those counts have been sufficiently stated, for the consideration of any objections to their sufficiency arising on the record.
The statute under which the indictment is drawn is, as we have seen, one of extensive import; and it may be difficult in certain cases to draw the line of distinction between cases to which the statute extends, and those characterized by similar fraudulent pretenses and false representations, but not embraced in the statute. Each particular case, as it arises, is to be contemplated with reference to the facts as stated and proved, in order to determine whether the case does, or does not, fall within the statute. We can neither extend the actual provisions of the statute, nor withhold their just and fair application, to meet any particular case.
What, then, are the acts expressed by the statute, constituting an offense under it ? The language is, “ if any person, by any false pretense or pretenses, shall obtain from any other person, any money, goods, merchandise or effects whatsoever, with intent to cheat and defraud such person.”
The mahing a false pretense, does not constitute a case within the statute; but money, or goods, or merchandise, or effects must have been thereby obtained from -another person ; nor is all this sufficient to bring a case within the express provision of the statute; these acts are required by the statute to have been done “ with intent to cheat and defraud such person,” from whom so obtained, in order to constitute an offense within the statute.
The false representations of Schleisinger, independent of those in the nature of promises, and relating to the future, and so inadmissible, are numerous, and certainly sufficient, as-charged in the indictment, if well stated. There is, however, no colloquium set" forth in the indictment, showing a negotia tion between the parties, and that the representations and pretenses were made with the intent to thereby obtain from said Woods & Pew any goods of any kind whatsoever, but *674 rather to add to their stock of goods others of a very inferior quality, by falsely representing them to he of a very superior quality. Nor is it, in fact, averred that said Woods & Pew were induced to part with said bills, by said false pretenses, •or that they were thereby cheated and defrauded of their said bills. But the indictment charges, that, by “ said several false pretenses, the said Louis Schleisinger did then and there unlawfully and fraudulently obtain from said Woods & Pew ■certain bank notes of the personal goods and chattels of said Woods & Pew, of the value of thirty-seven dollars, which said sum was and is a part of the sum of forty-five dollars, then and there paid hy said Woods ‡ Pew to said Louis Schleisinger, for ■said pens.” And it is nowhere, in either of said counts of the indictment, charged that said Schleisinger, by said false representations, obtained any other bills or notes from said Woods & Pew, except the bank notes hy them paid to him for the pens. If, then, the notes were notes which Woods & Pew had paid Schleisinger for pens, or for any other consideration, the notes were the property of Schleisinger, and not of Woods & Pew; and Schleisinger thereby obtained his own notes, and not theirs. But if it be said that the words “ paid . . for said pens,” as expressed in one count, and the words “for fifteen gross of said pens,” as expressed in the other count, are to be understood as paid after said false representations were so made, the conclusion sought is still illogical. Eor, if the bills were paid by Woods & Pew to Schleisinger “ for fifteen gross of pens,” and they received the pens therefor, which is not negatived, the bills were parted with by Woods & Pew for the pens, and so obtained by Schleisinger. And this construction of the phrase would seem as absolutely to negative the proposition that the bills or bank notes of Woods & Pew were obtained by false pretenses, as would the other construction. The gravamen of the charge in the indictment, is not that the defendant assumed to sell property to Woods & Pew, falsely and fraudulently pretending to be the owner, and having no title, and thereby obtaining from them money or goods with intent to cheat, etc. The title of the pens is not questioned. Schleisinger parted with, and Woods & Pew *675 acquired, the title and possession of the pens, as appears from the indictment, for which Woods & Pew so paid the bills obtained by Schleisinger. And, although the same is not set forth in a colloquium, as usual in such cases, the substance ■of the charge, as therein expressed, and reasonably to be implied, is, that, in the negotiation of the purchase, by Woods & Pew, from Schleisinger, of a lot of pens, and in relation to •an agency by Woods & Pew, to be conducted in the sale of pens, Schleisinger was guilty of willful misrepresentations, both as to himself and his pens, and in his promises in relation to the contemplated agency; and that, in their unfortunate interview with Schleisinger, Woods & Pew purchased of him, at the agreed price of forty-five dollars, fifteen gross of pens, from samples exhibited, and that the pens so purchased are found to be of an inferior quality, and of much less value than the samples; and that the same were known so to be by Schleisinger; and that they paid him, for the pens, bank notes, of the value of thirty-seven dollars, as part of the purchase price of the pens so bought of him. But it is nowhere stated, in the indictment, that the pens were not of the full value at which so sold, nor that the purchasers have ever offered, or are willing to return the pens, and receive back the bank notes; or that they would not have purchased at the same price, if they had been truly informed as to the quality of the pens; and have not, in fact, the best of the bargain.
But, however averse the facts show Schleisinger to have been to varying the proverb, “ It is nought, it is nought, saith the buyer," by letting the seller say it, where fair dealing required it; and however far the same facts show Woods & Pew to have been from taking in the stranger in this transaction, as shown by the proof on the trial, we can here only look to the indictment, and the charges set forth, as therein expressed, to judge of its sufficiency.
The offense must be charged with reasonable certainty in ■the indictment, and the accused can not be held to answer to any other offense than that so charged.
Upon a motion to quash an indictment, where the language expressing the offense is susceptible of more than one reason *676 able interpretation, the accused is entitled to the reasonable: interpretation most favorable to him.
Hoes the indictment, then, in this case, charge the accused' with obtaining either of the kinds of property named in the-statute? They are, as we have seen, “money,” “goods,” “merchandise,” and “effects.” Only one of these classes is named in the indictment, to-wit, goods. But it is always necessary for the pleader to specify the items of the class, in order to charge the offense with reasonable certainty. And this he-has attempted to do, in this indictment, in the following language : “ Certain bank notes, of the goods and chattels of said-Woods & Pew.” But bank notes have never.been recognized as goods, nor included within that term, under the criminal laws-of this State. For nearly fifty years, there has been a special and distinct statute, in this state, for the offense of stealing bank notes, which is inconsistent with the idea that bank notes are-embraced in the word “ goods,” used in the former and general statute against larceny. And the same distinction is expressed by the statutes of Massachusetts, New York, Connecticut, and other States. Nor would the term “ goods,”' even in a civil action, be held, only under exceptions to the general use of the word, to embrace promissory notes. No-lawyer, I apprehend, would have ventured a right of action to-recover for bank notes, upon a common count for “goods sold, and delivered,” under our former practice. Nor would they be regarded as subject to attachment and levy, like goods and'chattels. Bank notes are, strictly speaking, evidences of debt — mere money securities; but of so high a nature and. common use, as to be treated, in commerce, as money, and are often so regarded in law.
It is unnecessary to express any opinion, whether the use of the words “ money ” and “ effects,” in place of the words-“goods and chattels,” in the indictment, would have been regarded sufficient. If charged with obtaining money, the-price of the pens agreed upon was forty-five dollars, and the sum was paid, in part, in bank notes, as a currency of that value, and so accepted by Schleisinger as money; or if the; bank bills had been denominated the effects of said Woods &: *677 ■Pew, of the value of thirty-seven dollars, such a statement, ■in the indictment, would, of course, have presented still different questions, upon which any opinion here expressed would be foreign to the questions presented by this record
It is also unnecessary to here express any opinion upon the other objections taken by counsel for plaintiff in error, to the holding of the court of common pleas. Indeed, the record •does not show that counsel, on the trial, insisted upon proof ■being made that both Woods and Pew were imposed upon by •the false representations, and insisted that Pew as well as Woods should be shown to have been induced to part with ■.the bank notes by means of the false pretenses so made. The bill of exceptions does not present this question.
But it is sufficient to say, that an indictment, to charge the offense of obtaining property by false pretense or pretenses, within the statute, must clearly state and charge the following essential facts against the accused: 1. The making •of some false pretense. 2. The obtaining thereby, from another person, some item of money, goods, merchandise, or effects. 8. That the same was so obtained with the intent to ■cheat and defraud the person from whom so obtained of the .same.
This indictment does not, as we have seen, so charge any ■offense, within the language and meaning of the statute.
The judgment of the court of common pleas must, therefore, be reversed.

Judgment accordingly.

Scott, C.J., and Peck, Gholson, and Brinkerhoff, JJ., concurred.